

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LUIZ LUCATELLI, | |
| Plaintiff, | 2:11-cv-01829-RCJ-VCF |
| v. | |
| TEXAS DE BRAZIL (LAS VEGAS) CORPORATION; SALIM ASRAWI; and EVANDRO CAREGNATO, | ORDER |
| Defendants. | |

Currently before the Court are Defendants Texas de Brazil, Salim Asrawi, and Evandro Caregnato's Motion to Dismiss Plaintiff Luiz Lucatelli's Nevada wage statute, civil conspiracy, negligent hiring, training and supervision, and intentional and/or negligent infliction of emotional distress claims (#5), and Plaintiff's Countermotion to Amend (#15). The Court heard oral argument on March 9, 2012.

## BACKGROUND

Plaintiff Luiz Lucatelli ("Lucatelli") seeks unpaid overtime wages from his former employer, Defendant Texas de Brazil ("Texas de Brazil"). (Compl. (#1) at ¶ 1). He alleges that Texas de Brazil conspired to illegally smuggle aliens across the border to work for Texas de Brazil because illegal aliens would be too afraid of deportation to report the company's failure to pay overtime. (Id. at ¶¶ 57-59, 78). Lucatelli alleges the following. A "coyote" smuggled Lucatelli across the United States/Mexico border in October of 2004, after Defendant Evandro Caregnato ("Caregnato"), an employee of Texas de Brazil, visited Lucatelli in Brazil and requested that he move to the United States to work for the company. (Id. at ¶¶ 14, 16, 18). Lucatelli was later forced to repay Caregnato and Defendant Salim Asrawi ("Asrawi"), the

owner of Texas de Brazil, for his plane ticket to Mexico and the fee for the "coyote." (*Id.* at ¶ 19).

Texas de Brazil employed Lucatelli once he arrived in the United States. (*Id.* at ¶ 21). Lucatelli was never paid overtime, although he worked an average of sixty-five hours a week, seven days a weeks, fifty-two weeks a year. (*Id.* at ¶¶ 24, 28-29). He was forced to clock out after eight hours to avoid accumulating overtime. (*Id.* at ¶ 25). If he did not, his manager, David Parra, would "manually override" the computer system to "eliminate overtime hours." (*Id.* at ¶ 26). Lucatelli did not report Texas de Brazil's failure to pay overtime because he "lived in constant fear of deportation." (*Id.* at ¶ 57). He resigned on September 27, 2011. (*Id.* at ¶ 23).

Lucatelli filed a complaint in Nevada state court on October 13, 2011, alleging: (1) violations of the Fair Labor Standards Act for failure to pay overtime; (2) violations of NRS § 608.005 *et seq.* for failure to pay wages; (3) civil conspiracy; (4) negligent hiring, training, and supervision; (5) unjust enrichment; (6) intentional and/or negligent infliction of emotional distress; and (7) violation of 42 U.S.C. § 1981. (Compl (#1)).

Texas de Brazil removed the case to federal court on November 15, 2011. (Notice of Removal (#1)). On November 21, 2011, Texas de Brazil filed a motion to dismiss Lucatelli's second, third, fourth, and sixth claims for relief pursuant to Fed. R. Civ. P. 12(b)(6). (Mot. to Dismiss (#5)). Lucatelli filed his opposition on December 5, 2011, and countermotioned for leave to amend his complaint. (Opp'n (#12); Countermot. to Amend (#15)). Texas de Brazil filed its reply on December 15, 2011. (Reply (#18)).

## LEGAL STANDARD

When considering a Rule 12(b)(6) motion for failure to state a claim, the court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150, n. 2 (9th Cir. 2000). Such allegations must be construed in the light most favorable to the moving party. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Generally, the court should only look to the contents of the complaint during its review of a 12(b)(6) motion to dismiss.

However, the court may consider documents attached to the complaint or referred to in the complaint whose authenticity no party questions. *Id.; see also Durning v. First Bos. Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The issue is whether a claimant is entitled to offer evidence to support the claims, not whether the claimant will ultimately prevail. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quotations omitted). To avoid a Rule 12(b)(6) dismissal, a complaint does not need detailed factual allegations; "rather, it must plead 'enough facts to state a claim for relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (stating that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Even though a complaint does not need "detailed factual allegations" to pass muster under 12(b)(6) consideration, the factual allegations "must be enough to raise a right to relief above the speculative level . . . on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 127 S. Ct. At 1965. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at ___, 129 S. Ct. At 1949. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. At 1966).

If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend where there is no "undue delay, bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L.Ed.2d 222 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the

1  complaint cannot be cured by amendment. See *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d
2  655, 658 (9th Cir. 1992).

## DISCUSSION

### I. Violations of Nevada Wage Statutes

Texas de Brazil moves to dismiss Lucatelli's claim for violations of Nevada wage statutes because NRS § 608.005 *et seq.* do not contain a private cause of action. (Mot. to Dismiss (#5) at 5-6). A statute may contain an express or an implied private cause of action. *Baldonado v. Wynn Las Vegas, LLC,* 194 P.3d 96, 100 (Nev. 2008). A private cause of action will generally not be implied when "an administrative official is expressly charged with enforcing a section of the laws." *Baldonado*, 194 P.3d at 102. The Nevada Labor Commissioner is charged with enforcing NRS §§ 608.005 to 680.195. See NRS § 608.180. However, some of these statutes contain express private causes of action. See *Baldonado*, 194 P.3d at 104, n. 33 (noting that NRS §§ 608.140 and 608.150 contain express private causes of action).

Lucatelli has alleged violations of NRS §§ 608.020, 608.030, 608.040, and 608.018. (Compl. (#1) at ¶¶ 45-46). This Court has held that plaintiffs may bring a private cause of action under NRS § 608.140 for unpaid wages owed pursuant to NRS § 608.018. See *Buenaventura v. Champion Drywall, Inc.,* 803 F. Supp. 2d 1215, 1219 (D. Nev. 2011). In addition, the Nevada Supreme Court recently held that NRS § 608.040 contains a private cause of action because it is "illogical" that a plaintiff who can privately enforce a claim for attorneys' fees under NRS § 608.140 cannot privately enforce the underlying claim the fees arose from. *Csomos v. Venetian Casino Resort, LLC*, No. 55203, 2011 WL 4378744, at *2 (Nev. Sept. 19, 2011). Although the Nevada Supreme Court has never addressed whether NRS §§ 608.020 and 608.030 contain private causes of action, this Court predicts that given the similar nature of these statutes to NRS § 680.040,[1] a plaintiff may bring a cause of action under NRS § 608.140 for unpaid wages owed pursuant to NRS §§ 608.020 and 608.030.

---

[1] NRS §§ 608.020, 608.030, and 608.040 all provide penalties for failure to pay earned wages upon termination or resignation. See NRS §§ 608.020, 608.030, and 608.040.

4

Although Lucatelli alleges that he repeatedly worked more than forty hours a week, resigned on September 27, 2011, and has not been paid his earned overtime in violation of NRS §§ 608.020, 608.030, 608.040, and 608.018, he has not alleged that he is seeking enforcement of NRS § 608.140 for unpaid wages owed pursuant to NRS §§ 608.020, 608.030, and 608.018 . (Compl. (#1) at ¶¶ 23, 28, 45-46). Accordingly, this Court grants the motion to dismiss with leave to amend.

## II.   Civil Conspiracy

Texas de Brazil moves to dismiss Lucatelli's civil conspiracy claim because it is based on violations of 8 U.S.C. § 1321, part of the Immigration and Nationality Act ("INA"), for which there is no private cause of action. (Mot. to Dismiss (#5) at 6-7). Texas de Brazil is correct that Lucatelli may not bring a private cause of action under 8 U.S.C. § 1321. This Circuit has long recognized that it is inconsistent with the legislative scheme of the INA to imply a private cause of action for penal provisions like 8 U.S.C. § 1321 absent clear Congressional intent to create a private remedy. See *Nieto-Santos v. Fletcher Farms,* 743 F.2d 638, 641 (9th Cir. 1994) (refusing to imply a private cause of action under 8 U.S.C. § 1101(a)(15)(H)(ii) because it is inconsistent with the legislative scheme of the INA); *Lopez v. Arrowhead Ranches,* 523 F.2d 924, 926 (9th Cir. 1975) (refusing to imply a private remedy under 8 U.S.C. § 1324 because it is "solely a penal provision").

However, Lucatelli's civil conspiracy claim is not solely based on a violation of 8 U.S.C. § 1321. To plead a claim for civil conspiracy, Lucatelli must allege: "(1) the commission of an underlying tort; and (2) an agreement between defendants to commit that tort." *Boorman v. Nev. Mem'l Cremation Soc'y, Inc.*, 772 F. Supp. 2d 1309, 1315 (D. Nev. 2011). He alleges that "Caregnato and Asrawi further conspired to accomplish the unlawful act of . . . unjustly retaining the benefit of his hard work" and "of intentionally and/or negligently inflicting emotional distress on him." (Compl. (#1) at ¶ 56). Therefore, Lucatelli has sufficiently alleged a claim for civil conspiracy.

The Court's analysis does not end there. A conspiracy is "a combination of two or more persons, who by some concerted action, intend to accomplish an unlawful objective for the

purpose of harming another, and damage results from the act . . . ." *Consolidated Generator-Nev. Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1256 (Nev. 1998) (quotations omitted). However, under the intra-corporate conspiracy doctrine in Nevada, no unlawful combination of persons exists when an employee commits a tort on behalf of their corporate principal. *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 622 (Nev. 1983). To state a claim for civil conspiracy between a corporation and its agents, a plaintiff must allege that the corporate employees were acting as "individuals for their own individual advantage." *Id.* Lucatelli's complaint alleges that Asrawi, as owner of Texas de Brazil, and Caregnato, acting at all relevant times "in the course and scope of his employment with Texas de Brazil," conspired to illegally smuggle Lucatelli into the United States in violation of 8 U.S.C. § 1321, in order to "unjustly retain the benefit of his hard work," and "intentionally and/or negligently inflict emotional distress on him." (Compl. (#1) at ¶¶ 50-56). He does not allege that either were acting for their own individual benefit.

Accordingly, to the extent that Lucatelli bases his civil conspiracy claim on violations of 8 U.S.C. § 1321, this Court grants the motion to dismiss without leave to amend. However, to the extent that Lucatelli bases his civil conspiracy claims on the other torts in the complaint, this Court will grant the motion to dismiss with leave to amend provided that Lucatelli amends his complaint to sufficiently state a claim for these underlying torts in compliance with the intra-corporate conspiracy doctrine.

/////
/////
/////
/////
/////
/////
/////
/////
/////

### III. Negligent Hiring, Training and Supervision[2]

Texas de Brazil moves for summary judgment on Lucatelli's claims for negligent hiring, training and supervision because these claims are barred by the economic loss doctrine. (Mot. to Dismiss (#5) at 9-10). In Nevada, the economic loss doctrine precludes recovery of "purely economic loss" in tort actions. *Calloway v. City of Reno,* 993 P.2d 1259, 1270 (Nev. 2000), *overruled on other grounds by Olson v. Richard,* 89 P.3d 31, 33 (Nev. 2004). The purpose of the doctrine is to distinguish between liability in tort (duty-based recovery), and liability in contract (promise-based recovery). *Id.* at 1264. "Purely economic loss" is defined as "'the loss of the benefit of the user's bargain . . . .'" *Id.* at 1263 (quotations omitted). As such, the economic loss doctrine precludes recovery of economic loss that is otherwise recoverable under a contract remedy. *See Terracon Consultants W., Inc. v. Mandalay Resort Grp.,* 206 P.3d 81, 89 (Nev. 2009) (holding that the economic loss doctrine bars recovery in professional negligence cases because such loss is recoverable under the contract provisions and traditional contract remedies); *Lopez v. Javier Corral, D.C.,* Nos. 51541, 51972, 2010 WL 5541115, at *4 (Nev. Dec. 20, 2010) (holding that the economic loss doctrine did not bar recovery in a negligence claim because the policy considerations behind the doctrine were inapplicable as the plaintiff had no available contract law remedy).

Overtime wages are not "pure economic loss" because an employer's duty to pay

---

[2] The Nevada Supreme Court has never addressed whether the damages for a negligent hiring, supervision, and training must include physical harm. *See Brophy v. Day & Zimmerman Hawthorne Corp.,* 799 F. Supp. 2d 1185, 1201-02 (D. Nev. 2011). There is split among the jurisdictions at to whether physical harm must be pled for these claims that appears to depend upon whether the jurisdiction looks to the Restatement (2d) of Agency or the Restatement (2d) of Torts in defining these causes of action. *See Kiesau v. Bantz,* 686 N.W.2d 164, 172 (Iowa 2004) (holding that "[a] plain reading of section 213 of the Restatement (2d) of Agency reveals no requirement that an injured party must sustain physical injury . . . to recover" and therefore liability is premised on the employee's underlying tort); *Podolan v. Idaho Legal Aid Serv., Inc.,* 854 P.2d 280, 289 (Idaho Ct. App. 1993) (holding that negligent supervision claims must allege "bodily harm" as required by the Restatement (2d) of Torts § 317). Regardless of what approach Nevada adopts, this Court will not dismiss the claim on this basis. Under the agency approach, Lucatelli has alleged the viable underlying tort of intentional infliction of emotional distress. Under the tort approach, as discussed below, this Court predicts that the Nevada Supreme Court would not require a plaintiff to plead physical harm where the plaintiff was deprived of their personal liberty.

7

overtime arises from statutory, not contractual, obligations.[3]  See NRS § 608.018. Accordingly, this Court denies the motion to dismiss Lucatelli's negligent hiring, training and supervision claims because Lucatelli is not seeking recovery of purely economic loss.

## IV. Intentional and/or Negligent Infliction of Emotional Distress

### A. Intentional Infliction of Emotional Distress

Texas de Brazil moves to dismiss Lucatelli's intentional infliction of emotional distress claim because he has not alleged sufficient extreme or outrageous conduct. (Mot. to Dismiss (#5) at 10-12). The elements of an intentional infliction of emotional distress claim are: (1) "extreme and outrageous conduct with either the intention of, or disregard for, causing emotional distress; (2) the plaintiff . . . suffered severe or extreme emotional distress; and (3) actual or proximate causation.'" *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (quotations omitted). "Extreme and outrageous conduct is that which is 'outside all possible bounds of decency' and regarded as 'utterly intolerable' in a civilized society." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (quotations omitted).

According to Lucatelli, he was virtually imprisoned by Texas de Brazil and forced to work excessively long hours without compensation under the threat of deportation so that he could reimburse the company for the cost of illegally smuggling him across the border. *See* (Compl. (#1) at ¶¶ 19, 57-59, 78). Accepting these allegations as true, Caregnato, Asrawi and Texas de Brazil's behavior is certainly 'outside all possible bounds of decency,' and 'utterly intolerable in a civilized society.' *See Maduike*, 953 P.2d at 26. Therefore, Lucatelli has pled sufficient extreme or outrageous conduct to state a claim for intentional infliction of emotional distress.

Generally, Nevada does not allow plaintiffs to recover for emotional distress absent proof of a physical impact, or "serious emotional distress" resulting in physical injury or illness.

---

[3] Furthermore, Lucatelli does not have a contract remedy by which to pursue these damages because employees in Nevada are presumed to be at-will and may not sue former employers unless the termination offends state public policy. *Ozawa v. Vision Airlines, Inc.*, 216 P.3d 788, 791 (Nev. 2009). As such, the policy considerations behind the economic loss doctrine are inapplicable. *See Lopez*, 2010 WL 5541115 at *4.

8

*Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998). However, this Court predicts that the Nevada Supreme Court would not require a plaintiff to plead harm in the circumstances alleged in this case. Lucatelli alleges that he suffered a deprivation of personal liberty similar to that found in the crimes of involuntary servitude and peonage. *See United States v. Kozminski*, 487 U.S. 931, 952, 108 S. Ct. 2751, 2765, 101 L.Ed.2d 788 (1988) ("involuntary servitude" . . . "means a condition of servitude in which the victim is forced to work for the defendant by the use of threat of . . . coercion through law or the legal process"); *Clyatt v. United States*, 197 U.S. 207, 215, 25 S. Ct. 429, 430, 49 L.Ed.2d 726 (1905) ( "peonage" means a condition in which the victim is coerced by threat of legal sanctions to work off a debt owed to the defendant). Courts have long recognized that the nature of the violation, not the damage resulting therefrom, gives rise to liability in claims that result in the deprivation of person's liberty. *See Rhodes v. Robinson*, 612 F.2d 766, 772 (3d Cir. 1979) (holding that emotional harm is recoverable for violations of the due process clause and Eighth Amendment because "the critical element of each . . . violation is not the nature of the plaintiff's injury but the manner of the infliction. . .").

In the context of torts, the deprivation of personal liberty is most often found in claims for false imprisonment. *See Lerner Shops of Nev., Inc. V. Marin*, 423 P.2d 398, 400 (Nev. 1967) ("False imprisonment is a restraint of one's liberty without any sufficient cause therefor"); Restatement (2d) of Torts § 35 (2011) (False imprisonment occurs when an actor (1) intends "to confine" a person "within boundaries fixed by that actor; (2) does so confine the person; and (3) the person "is conscious of the confinement or is harmed by it."). Emotional harm is normally the only harm that arises from such tortious conduct. *See* Restatement (2d) Torts § 905, cmt. c. (2011) ("The principal element of damages in actions for . . . false imprisonment . . . is frequently the disagreeable emotion experienced by the plaintiff"); *see also Lerner Shops of Nev.*, 423 P.2d at 401 (rejecting a jury instruction for false imprisonment that only allowed recovery of damages for physical injuries sustained because the plaintiff was "entitled to compensation for . . . injury to the feelings from humiliation, indignity and disgrace to the person").

Therefore, this Court predicts that the Nevada Supreme Court would not require a plaintiff to plead physical harm to maintain a claim for intentional infliction of emotional distress when such a claim arises from a deprivation of the plaintiff's personal liberty. Accordingly, this Court denies the motion to dismiss Lucatelli's intentional infliction of emotional distress claim.

### B.     Negligent Infliction of Emotional Distress

Texas de Brazil moves to dismiss Lucatelli's claim for negligent infliction of emotional distress because Lucatelli has not alleged sufficient extreme and outrageous conduct and because his recovery is barred by the economic loss doctrine. (Mot. to Dismiss (#5) at 12). As stated above, Lucatelli has alleged sufficient extreme and outrageous conduct to state a claim for emotional distress. Furthermore, his claim is not barred by the economic loss doctrine because he is not seeking purely economic loss.

Nevada has not yet expressly recognized a direct-victim negligent infliction of emotional distress claim. In *Shoen v. Amerco Inc.*, the Nevada Supreme Court held that "negligent infliction of emotional distress can be an **element of the damage** sustained by the negligent acts committed directly against the victim-plaintiff" because it was "only logical" for a direct-victim to recover "if a bystander can recover for negligent infliction of emotional distress." 896 P.2d 469, 477 (Nev. 1995) (emphasis added). However, this language does not expressly create a cause of action for negligent infliction of emotional distress. *See Kennedy v. Carriage Cemetery Serv., Inc.*, 727 F. Supp. 3d 925, 934 (D. Nev. 2010). Furthermore, this Court has predicted that Nevada would not recognize a direct-victim negligent infliction of emotional distress claim. *See Kennedy*, 727 F. Supp. 2d at 935 (reasoning that the court in *Shoen* was merely recognizing that emotional distress could be pled as an element of damages since direct-victims may recover under ordinary negligence claims); *Coughlin v. Tailhook Ass'n, Inc*, 818 F. Supp. 1366, 1369 (D. Nev. 1993) (reasoning that the policies underlying the recognition of bystander emotional distress claims are not present for direct victims because these plaintiffs can recover through ordinary negligence claims).

Lucatelli may recover emotional distress damages under his intentional infliction of emotional distress claim and as part of his damages for his negligent hiring, training, and

supervision claims. Therefore, this Court will grant the motion to dismiss Lucatelli's negligent infliction of emotional distress claim without leave to amend.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendants' Motion to Dismiss (#5) Lucatelli's Nevada wage statute violation, civil conspiracy, and negligent infliction of emotional distress claims is GRANTED. Defendants' Motion to Dismiss (#5) Lucatelli's negligent hiring, supervision, and training, and intentional infliction of emotional distress claims is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Countermotion to Amend (#15) his Nevada wage statute violations and civil conspiracy claims is GRANTED. Plaintiff's Countermotion to Amend (#15) his negligent infliction of emotional distress claim is DENIED.

DATED: This 11th day of May, 2012.

_____
United States District Judge